**McCUBBINS et al. v. VIRGINIA TRUST CO. et al.**

**No. 3949.**

Circuit Court of Appeals, Fourth Circuit.

Jan. 6, 1936.

Clifford Frazier and R. M. Robinson, both of Greensboro, N. C. (Woodson & Woodson and Hudson & Hudson, all of Salisbury, N. C., on the brief), for appellants.

L. R. Varser, of Lumberton, N. C. (R. A. McIntyre and O. L. Henry, both of Lumberton, N. C., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and COLEMAN, District Judge.

NORTHCOTT, Circuit Judge.

This is a suit in equity instituted by the Virginia Trust Company and certain

named individuals, trusts, and corporations, herein referred to as the plaintiffs, against the appellants, herein referred to as the defendants, to foreclose on certain property upon which a deed of trust had been given to secure bonds held by the plaintiffs. The defendants answered, setting up the plea of usury under the North Carolina statute (Consolidated Statutes, § 2306). The court below denied the defendants' plea of usury, from which action this appeal was brought.

On October 1, 1927, E. P. Wharton (testator of W. G. Wharton, executor), and the defendant F. N. McCubbins, executed and delivered to the Virginia Trust Company, ninety coupon bonds, each in the sum of $1,000, bearing interest at the rate of 6 per cent. per annum, payable semiannually. These bonds were payable to bearer and were secured by a deed of trust executed by Wharton and McCubbins, and others, conveying certain property located in the city of Salisbury, Rowan county, N. C., which deed of trust was recorded in the office of the register of deeds on October 4, 1927.

The Virginia Trust Company, after the bonds were delivered to them, sold and transferred them to the other plaintiffs herein. The said trust company holds some of the bonds as trustee for various trusts but owns no bonds in its own right.

Prior to and at the time of the execution and delivery of said bonds, it was agreed between E. P. Wharton and the Virginia Trust Company that the Virginia Trust Company should be paid out of the sale price of the bonds the total sum of $2,600, for its services in handling the bonds, selling the same to the investing public, collecting the semiannual interest, distributing the same to the bondholders, looking after the property with respect to taxes and insurance throughout the period of the life of the loan, to wit, ten years, and to pay for the inspection of the property and the expenses of its own legal department in attending to the details of the transaction.

After the issuance of the bonds and the execution of the deed of trust the owners of the property executed a deed conveying it to the Salisbury Investment Company, a corporation, which investment company assumed the payment of said bonds and paid in addition the sum of $110,000, cash to E. P. Wharton and F. N. McCubbins. Fifteen thousand dollars of the bonds were retired leaving a balance of $75,000. De-

fault was made and this suit was brought to subject the property conveyed by the deed of trust to the payment of the residue of the bonds.

The North Carolina Statute respecting usury is section 2306 Consolidated Statutes, which provides in part as follows: "The taking, receiving, reserving or charging a greater rate of interest than six per centum per annum, either before or after the interest may accrue, when knowingly done, shall be a forfeiture of the entire interest which the note or other evidence of debt carries with it, or which has been agreed to be paid thereon."

The statute further provides in substance that, when "a greater rate of interest has been paid," that the persons who pay it may recover back twice the amount of the interest paid in an action in the nature of action for debt. It is further provided that when suit is instituted to recover upon evidence of debt, the party charged may plead the usury penalty as a counterclaim for twice the amount of interest paid and for the forfeiture of the entire interest, but a saving provision is included permitting a private corporation to pay a commission for the sale of its coupon bonds and allowing bonds to be sold at less than the par value.

The only question involved is whether the payment to the Virginia Trust Company of the sum of $2,600 constituted a receipt by the trust company of a greater rate of interest than 6 per cent. per annum.

The judge below filed written findings of fact and conclusions of law and found as a fact that the payment to the Virginia Trust Company was a reasonable brokerage charge for the services, specified in the deed of trust, to be performed by the trust company and was not out of proportion to the value of said services; that the said charge of $2,600, was not made or received as interest or in lieu of interest; and that the transaction was not made for the purposes of evading the usury laws of the state of North Carolina. The trial judge further found that the Virginia Trust Company made the contract with Wharton and McCubbins in Richmond at their instance; that the bonds were not bought by them except as brokers to be sold on the market; and that none of the plaintiffs, other than the Virginia Trust Company, received any part of the $2,600, paid as brokerage and had no interest in same or knowledge thereof.

The trial judge held, as a conclusion of law, that the plaintiffs were entitled to the relief prayed for and ordered the sale of the property under the deed of trust.

A careful study of the record and the evidence as to the negotiations leading up to the transaction by which the brokerage fee of $2,600, was paid to the Virginia Trust Company, leads us to the conclusion that the findings of fact made by the judge below and his conclusions of law were proper. It was expressly understood between those negotiating the transaction that the Virginia Trust Company was acting solely as a broker. In a letter of August 11, 1927, the president of the trust company wrote to E. P. Wharton, among other things, the following: "These loans we make on long time are sold to conservative investors and not held by this Company, our compensation coming in a form of a reasonable brokerage paid by the borrower, and one of our requirements is that the value of the property shall be twice the amount of the loan."

Counsel for appellants rely upon a number of North Carolina decisions.[1] A study of these cases shows that the circumstances in all of them are very different from the circumstances proven to have surrounded the transaction in the instant case.

In Doster v. English, 152 N.C. 339, 67 S.E. 754, 755, the court states that four requisites are necessary to constitute usury.

"(1) There must be a loan express or implied;

"(2) an understanding between the parties that the money lent shall be returned;

"(3) that for such loan a greater rate of interest than is allowed by law shall be paid or agreed to be paid as the case may be; and

"(4) there must exist a corrupt intent to take more than the legal rate for the use of the money loaned."

The third and fourth requisites as laid down by the North Carolina court are not present here.

It is contended on behalf of the plaintiffs that the statute of limitations contained in North Carolina Consolidated Statutes, § 442, prevents any recovery, but in view of our conclusion that there was no usury

shown, it is not necessary to decide that point.

The transaction was an ordinary brokerage transaction for the sale of bonds by a reputable trust company; the brokerage fee charged and paid was a reasonable one for the services performed by the trust company; and no element of usury entered into the transaction.

The finding of the judge below was correct, and the decree is accordingly affirmed.

---

[1] Sherrill v. Hood, 208 N.C. 472, 181 S. E. 330; Federal Reserve Bank v. Jones, 205 N.C. 648, 172 S.E. 185; Pugh v. Scarboro, 200 N.C. 59, 156 S.E. 149;

*Certiorari denied 56 S. Ct. 592, 80 L. Ed. ——.

Ripple v. Mortgage & Acceptance Corporation, 193 N.C. 422, 137 S.E. 156; English Lumber Co. v. Wachovia Bank & Trust Co., 179 N.C. 211, 102 S.E. 205.